Welcome all. The first case for argument this morning is 20-2024 Starwalkers v. Secretary of the Army. Mr. Dowd, whenever you're ready. And you may remove your mask while you're at the podium if you're comfortable with that. If you're not, you can keep it on. Thank you, Your Honor. Thank you. Good morning, Your Honors, and may it please the Court. Matthew Dowd for the appellant Starwalker. This case concerns a government contract called the HNT or the Host Nation Trucking Contract for and that covers the period that's commonly known as the surge that President Obama implemented shortly after he entered office. It's kind of weird to be talking about Afghanistan these days, right? It is very odd timing, Judge Post. But I'll turn back to this case. Here the board issued some two and a half years after its hearing about a six-page decision which showed absolutely almost no consensus. One board member... No, we understand that. Let me just glide over that to get to what I think is the heart of the case. Because in any event, a lot of these issues are Genova review. So we're going to look at the record and look at the contract and make a decision about that. So why don't we get to that? And, you know, looking at Section 4.1, 4.10, they require the operation of the trucks must be directed on the official LMRTMR in the mission sheet. And so if an empty return trip is not directed on the mission sheet, how is it authorized? Judge Post, what we've tried to explain in our briefs is that when you read all of the applicable provisions together, including the LMRTMRs and including Q&A 34, the only reasonable conclusion is that backhaul was necessarily required. So when you look at Section 4.11.1, it's actually the only section in the contract that talks about mission completion. The fundamental basis and the fundamental pay scale for this contract... Are you saying that because they have to ultimately carry the paperwork back to Bagram, that the mission completion isn't until then? Judge, you use absolutely yes. How is that right? Because it talks about the paperwork being signed off at the final destination by a point of contact, which is where the delivery is. If that's the final destination, why isn't that the final destination for the mission? For several reasons, Your Honor. So both the contracting officer and the contracting officer representative testified during the hearing and during deposition that the mission was not completed until the mission sheets were returned back to the program manager. Yeah, but we're not in ambiguous where. Let's just assume that we're looking at the language of these provisions. What the testimony is, is not relevant. Explain to me, based on the plain language, why just delivering paperwork back to headquarters essentially has anything to do with when a trucking operation is complete. Because, Your Honor, it was more than just paperwork. These are government resources. These are government resources that allow... The paperwork is a government resource? Absolutely, Judge Chen. Because it allows the Army to track where critical equipment, materiel, supplies were transported, whether they were transported or not. And in fact, when we look at the... Let me ask you a hypothetical, or not really a hypothetical. Aren't you also asking for and saying backhaul is movement from Bagram to someplace else if the truck is empty? Not necessarily, Your Honor, because again... Isn't that the way you did this? You basically just took each LMR thing and doubled it. So if the truck was sent empty from Bagram to someplace else, you want payment for that. And then if it comes back from Bagram loaded, the paperwork's going to be delivered then. I don't understand how that first part is... When they end up in whatever the location is, they don't have to first take the paperwork back for that to be completed. I really don't understand this point at all. The paperwork point seems not your best argument here. Your Honor, we're basing this on the record. We're basing this on the testimony. We're basing this on the language of Section 4.11.1. So if I have a minute to address a couple of your points. So I believe you're referring to an example that my counsel for the government raised with respect to transport from Camp Phoenix to Bagram. And as we've explained in our briefs, that may be an instance which backhaul is not required. And I think that's part of the reason why this record's a little confused. Because the board, at least one member of the board, Judge McElmail, ruled against this for quantum. Quantum was not properly before the board. And consistent with this court's jurisprudence in Dewey Electronics, for example. The contracting officer only ruled on entitlement. Contract interpretation. So I admit, and we admit, and we've tried to explain in our briefs, that there may be instances of mission sheets that backhaul is not required to be paid for. But what we're trying to... But that's not how you at least initially calculated your damages. I mean, I don't want to get hung up on this. Because I think this delivery of paperwork is a very insubstantial argument. I think there are other parts of this that may be a little bit stronger. But if you're hanging your hat on the fact that paperwork ultimately gets sent back to headquarters because the government wants the final documents in its program office and not spread out all over a war zone, that makes sense for purposes of paperwork. But it doesn't have anything to do with what the government's going to pay for in terms of moving trucks around. Your Honor, your judges, I'll push back a little bit on that. Because I think, again, below, before the board, it was... It's not really just paperwork. But what we've tried to do... Can I just ask you a basic question about this, since we're spending time on this paperwork thing? It didn't necessarily involve the actual trucks coming back. I mean, delivering the paper could be somebody on a motorbike. What am I missing here? Did it necessarily, absolutely? Did you say you have to deliver the program sheets in the empty trucks? So, your Honor, I'll take that in a couple points. So, when you look at the mission sheets, the LMR, TMRs, there are some examples in the Joint Appendix of 2058, 2060, 2082, right? And if I could explain, and I'll give your Honors a moment to pull it up. Can you give us those numbers again? The three that I mentioned were 2058, 2060, and 2082. So, it should be in the third volume. And I apologize, but these are not the best reproductions. But if we could turn to 20... Maybe 2060 is a clean example. So, if we look at... This is an example of a mission sheet. And the way this contract was structured, and the expectation and the intent of the parties was that each order, each mission sheet, each task order was tied to a mission sheet. And the instructions were on the mission sheet. And they specified specific drivers. They specified specific tracking numbers and cargo. And they had to be signed off, like your Honor recognized. Now, when we look at the bottom left-hand side, it's just above the black box, right? It reads, carrier's proof of mission completion. If possible, retain a copy for your records. If not possible, record the TMR and truck information. Then on the previous page, I'm sorry, 2058, a similar one says, do not keep the original mission sheet. So, the instruction on the LMR TMR itself is that the driver itself has to keep the mission sheet and the return at the bottom. Now, Judge Prost, with your example of one motorbike driving through the back roads of Afghanistan. Well, it doesn't have to be the actual truck. He doesn't have to come back with the actual, he doesn't have to deliver it via the actual empty truck, right? So, your Honor, if we're talking about the realities of what was going on in Afghanistan in 2009 and 2010, absolutely. There's no feasible way to return these other than that. And that gets to our point that we tried to explain, where our client offered multiple times, hey, if you want these returned, we'll set up an email system. If you want these returned, we'll set up a fax. The government refused to accept those offers. Well, what does that have to do with whether they meant to pay for backhaul? It meant that they wanted the original documentation. You do government contracts. You know that the government sometimes has arbitrary requirements for original documents versus copy documents for whatever reason. I don't understand how that has anything to do with whether they intended, because these are all firm fixed price contracts. They have a specific amount for every specific time. But the mission, and what you're basically saying is the government intended when it set a number, they're actually going to pay double for each trip. Your Honor, I respectfully disagree. What the intent of this contract, again, think about it, early 2009. This was solicited in 2008. 2009, the value of the contract gets multiplied six-fold. The intent of this contract was to support the surge. We're adding 30,000 troops. All of the Humvees, MRAPs, material, clothing, food, toilet paper for the troops out in the front lines and the FOBs, it was all intended to be flown in through Bagram. And then from Bagram, it's delivered to the FOBs out in the troops. Southern Iraq, past Kandahar, down the south, like Kemp. I don't understand how any of this is helping you. Why aren't you talking about the actual contract language where it shows that the government clearly intended to pay for the return trips? Because that goes to the Q&A. And when we ask specifically, how would that help? Are you saying that that language means nothing as directed by the LMR-TMR? Judge, of course, absolutely not. We're saying that you have to read that in the context of 411.1. And when you look at the government's argument, they rely only on three provisions. Their main argument refers to 4.1, 4.2, and 4.10. What we've tried to say is, well, look at the contract as a whole, consider the Q&A, right? We have 4.1, 4.2, 4.10, 4.11.1. We have section E-1.2 of the invoicing clause that says, for specific activities, you cannot invoice. And it doesn't include backhaul. And then when you read all of that in the context of our Q&A 34, which necessarily becomes part of the contract, right? Because we ask specifically, how will backhaul be compensated? And the government's response is, quote, it will be counted per 4.2. And then when you go back to 4.2. But wait, can I just stop you here? Because this is, I think, critical. The question, I mean, it may not have been the way you formulated it, but the way the government reformulated it when it answered was, how will backhaul and retrograde as defined by whatever, is it 4.10? That is the backhaul retrograde provision. Well, that provision already says, as dictated by an LMR. So the government understood this question, at least as my best reading, is you have this whole schedule of, here are these regular things. You've got a whole schedule of prices. You know how you're going to do those. But the 4.10 things, where you might be required to do backhaul retrograde missions, as defined by an LMR, doesn't necessarily correspond to that price list. You ask, how are they going to be paid? And the government says, just like all the others. But you're trying to define backhaul as something just in general, as opposed to backhaul as articulated on an LMR. And I don't see where the government ever suggested that backhaul without an official order would be compensated. Your Honor, if that's your view of the contract, and if that comes out as the correct interpretation of contract, then that essentially means that through these two years, two and a half years of contracting, a $2 billion contract, where we had our client alone executed over about 20,000 missions, the government never offered to pay backhaul. And they should have said that in response to the Q&A. What do you mean they never offered to pay backhaul? Do you mean they never offered to pay backhaul for an empty vehicle? Or if they ordered cargo to be put on a vehicle on a return trip, they didn't offer to pay? That's a little different, Your Honor, because I think if there's cargo on it, that's not necessarily backhaul. So backhaul is the return trip. Basically, if you're going from Bagram out to Camp Helm, out to coast, probably on the coast next to Pakistan, the trucks have to come back. That was the intent of this contract. There was no feasible way to execute this contract. Why isn't the best reading is the intent of the contract is when they put up the firm fixed price for, use this kind of truck, use this kind of container, that it included the entire mission. Then the government should have said that in response to Q&A 34. Now that's what they said when they modified the contract for the option year. You were asking them about how to price backhaul under that provision, which incorporated a reference to an LMR. And they said, if you get an LMR for backhaul, then it's priced the same way. You're saying they never gave you an LMR for backhaul. Well, that means they never intended to pay. Did you ask for LMRs for a cargo-less backhaul? When you read the contract in connection with 411.1, and when you read the contract with the understanding of the intent of the parties to ship supplies and arms and ammunition and MRAPs and Humvees for 30,000 new troops, the only way to reasonably construe this is that the government expected backhaul. You had to get the troops back from the FOBs. Whether that's right or wrong, you're of the contract for 2.10, and eliminate what is arguably the basis for the provision in its entirety, which says, as indicated on an official LMR. You read that language outright. You're saying that's not a requirement. Your Honor, we disagree. I think another way to look at this, at least in our view, is that is the only reasonable construction of a- I'm just confused. Because if your client honestly thought it should be getting LMRs for empty return trips, you would think that you would have seen them raise that issue far earlier and say, why aren't you giving us an order for the empty return trip so we can get paid for it? Your Honor, we did. Actually, it's in the record. So there's emails corresponding back and forth with the contracting officer. This is the summer of 2009. We never got an answer from the contracting officer. We never got a definitive answer saying that backhaul is not. There were emails back and forth. They were from lieutenants. They were from Major Coger, who wrote that email against our client. And there was a lot of back and forth. And this was all during there's a congressional investigation concerning this contract. There's a criminal investigation by the Division of the Army. So we certainly raised it. There's no question that we raised it. The expectation all along was that the deliveries would be coming from Bagram, going out to the FOBs, the COPs, and the trucks would necessarily have to come back. And with all respect, if the government simply intended never to pay backhaul, they could have said that, and they should have said that in response to Q&A 34. And they finally did say that when they modified the contract for the option year, where when you look at sections 4.10 and 4.11, and Judge Hughes, this goes to your question about  First time they distinguished retrograde and backhaul is in the modification three. They put 4.10 is now in section 4.10. Sorry, backhaul is now in section 4.10. Retrograde is now in 4.11. They modified sections 4.2 and 4.10 of the contract to expressly say that backhaul will not be paid. And they actually changed it because they say about negotiation with the MCV, the Movement Control Battalion. Now ultimately, from a practical and very feasible standpoint, there is really no way to operate this contract or execute this contract successfully without backhaul. And our client did our best. We asked during the suspension. But I don't think the government is saying that there's no way that it didn't understand that there would be cargo-less backhaul. Their argument is that this is all incorporated in the firm fixed price for each trip that's based on an LMR. So, Your Honor, but that gets us to the question of whether the government's interpretation is the only reasonable interpretation. Because I think most of our discussion today is about whether the contract itself is unambiguous. We focused on that. We haven't focused on any parole evidence or the extrinsic evidence. For this court to affirm the board's decision, actually Judge Shackelford's decision, on the contract interpretation, the court has to conclude that the only reasonable interpretation of the contract is that backhaul is excluded from payment unless it's absolutely, specifically specified on an LMR and TMR. Is 4.10 the only reference to backhaul in the contract? Judge Chen, correct. So there's no definition of backhaul. And we have, But the only reference to the word backhaul in the entire contract is connected to these official LMR mission sheets. Right, and when you read 4.10 in connection with 4.11.1, and the key here really is what defines the completion? 4.11.1, though, says upon mission completion, which suggests to me, plain reading to me is, you have to return the sheets after the mission has been completed. And the mission statement explains that you complete the mission once you deliver the goods and equipment to the destination point. Judge Chen, our response to that is, I think, at best, that's a reasonable interpretation. But again, it doesn't say, the contract language itself doesn't say that the mission completion is ended at the destination point. If that were the case, I would agree that that would be perhaps fatal to our case. But all that does is confirm that there's some ambiguity here. There's no definition of mission completion because that defines when travel is getting paid. And there's no definition of backhaul. So again, at best, this contract is ambiguous. And if it is ambiguous for that provision, then the government agrees that there should at least be a remit. And Your Honor, I know I'm way into my rebuttal time. Yeah, you're way over every time. So we'll restore some rebuttal, Thank you, Judge Chris. Good morning.  May it please the court. The court should affirm the denial of stall workers' claims because the clear, plain language of the base year contract. Are backhaul and retrograde the same thing? No. Referring now to the terms of the base year contract, retrograde was explicitly defined. There was a definition. It involved moving supplies, resources, back to Bagrad so they would go to the continental United States. And that's explicit in the definition. So retrograde operations in the base year of the contract are a very narrow group of operations. And when you say it's that narrowly defined, you mean to include the limitation to moving the equipment back to the United States, not just moving equipment around? Correct. It is defined as going back toward continental United States. And that's in the contract? That's in the first year of the contract. Okay. Okay, the definition changes for the option year of the contract. What about the common, ordinary meaning of backhaul? Doesn't that encompass just merely a return trip to the point of origin? And whether that's with cargo or without cargo? I would agree that backhaul is returning to the point of origin. What the contract said in this case is that backhaul is payable only if it is indicated on the LM or TMR. Where does the contract say precisely what you just said? It says that- The only backhaul that you're going to get paid for is backhaul that's set forth in a explicitly in a mission statement. That is our understanding of paragraphs 4.1 combined with 4.10. 4.1 says convoys may travel only as directed on the official LM or TMR. And then going to paragraph 4.10, it says that's the one for backhaul operations, retrograde operations. It says there the contractor shall pick up and deliver equipment and resources associated with backhaul operations. I understood your answer. So you think there's backhaul all of the time, but that the contract only says we're only going to pay for those instances of backhaul in which we did the official LMR. I understood Judge Chen's question to go to the what is backhaul? And that's all I was answering. Okay, well, actually, then maybe, sorry to interrupt. So you agree there were backhaul on all these trips. Is the government's view though, yes, there was backhaul, but you only get paid for those instances of backhaul in which we've indicated this on the LMR? Are you saying that none of these trips that they're arguing about constituted backhaul under the contract? Okay, those are actually it's three separate questions. The first is what is backhaul? I answered Judge Chen's question. The second question is, did backhaul occur? Because I understand that that's part of your honors question. Certainly it appears based on the testimony and the record that backhaul occurred, meaning movement from the point of delivery to somewhere else. If you go into the testimony, backhaul happened. That backhaul was not on an LMR, TMR. That's absolutely clear in the record. I'm getting a little confused myself. Backhaul can include just the return of the empty truck, or it can include a return trip that where you carry cargo back, right? Is that correct? Does backhaul have both definitions? Or in your view, is it just return of the empty truck? If the question is the definition, as how people understood backhaul. Yeah, the general definition. People understood backhaul to be either carrying cargo or not carrying cargo. Okay, and so I just wanted to get there. So and then, are you saying that you're aware of instances where backhaul happened, where these return trucks were carrying cargo, but not for an LMR? Or are you saying you're aware that backhaul of empty trucks occurred, but there was no LMR that would get them compensated for that? The latter, your honor. Backhaul of the empty trucks occurred. There was never, referring to both years of the contract. Right, so in your view, the backhaul that's referenced in 410 has to be read in combination with the first part of the sentence, which contractors shall pick up and deliver equipment and resources associated with backhaul. Yes, certainly. On an LMR. Yes, certainly. You read the whole sentence there, subparagraph 4.10. So in order to be payable under the base year, the express language is here. It has to be associated with picking up equipment and resources and traveling it as directed on the LMR-TMR. That did not happen. Therefore, it was not payable. There was never an instance where we, excuse me, where the government directed that the contractor backhaul carrying cargo from one location to another location because we never directed it. They were never entitled to payment. And also, we're relying on- So you're talking about backhaul now where you are delivering goods on the back end between one place or another and not empty trucks returning them back? Yes, that's what I was referring to. If there was an instance where we had directed on an LMR-TMR that the carrier would carry equipment or cargo or whatever, fuel from one location back to another location and it was on the LMR-TMR, then the government would have paid for it and they would have been entitled to it. It did not happen. That's why- So it's your view that the government had the discretion on a case-by-case basis? So even, we're not talking about empty truck movement in return. We're talking about you get to one location, you drop off your stuff and you're told, and take this back to the other location. You're saying that sometimes the government may have indicated that that's official and therefore they got paid and other instances the government may not have indicated it on an LMR and they were not paid for that. That's not what I'm saying. Okay. Okay. What we're saying is that in order to be entitled to payment, there had to be an LMR-TMR directing you, the carrier, to do backhaul. And as the paragraph 4.10, that contemplates that you would be carrying something. There was never any instance during the base year of the contract where we directed through an LMR-TMR that the contractor perform backhaul. Now, the other question your Honor asked was, did they travel back to the origin? Well, according to the testimony, in many cases they did. But that was the carrier's decision as to how they would route their trucks. The trucks were empty, they went where the carrier told them to go. We didn't direct it. And we're also- Is it your view that that was, I think Judge Hughes suggested this earlier with your friend, that that was sort of built into the amount that the contract was valued at? Kind of like I hire a moving company to move me to California. I'm paying for them to go from DC to California. I'm not officially paying them to drive the truck back empty back to DC, but presumably the cost of that is somehow included in the cost of my move, right? Is that what's going on here? Well, it could very well. Well, I have to now rely on testimony, Your Honor. There was testimony in the record from one of the subcontractors that worked for Starwalker. And he testified that he was one of the truckers. His rates included backhaul. He gave a fixed rate, and it covered moving his trucks forward and moving his trucks back to the origin. And that's the way he priced it, and that's what he was paid. And we were talking in those circumstances where the truck coming back, the backhaul consisted of an empty truck. Yes. Yes, based on that subcontractor's testimony. Why isn't your answer to Judge Post's question just yes? Yes, based on the unambiguous reading of this contract, the contractor needed to factor in its own costs of returning trucks back without any cargo to the point of origin so that it could pick up more cargo and to deliver to other parts of the war zone. Your Honor, we certainly agree with you. I took Judge Post's question to be asking me what actually happened as opposed to what should have happened. And I distinguish between the two points your Honors are making. Can I just, I know maybe this is frustrating for you because we're asking questions that are unclear, but bear with me. Let me just ask you one question for me to put this all together in my head. There seem to be two kinds of backhauls. One is just returning the empty truck, and you say generally the government doesn't pay for that, that's just built in costs. But then 410 seems to refer to a particular kind of backhaul where you are directed to pick up and deliver equipment. So the backhaul operation is the pickup and delivery of equipment, not just the driving back the empty truck. So are you saying that 410 means that in that limited circumstance where you're directed to move stuff back, it's kind of up to the government? I mean, you still need an indication, but on the LMR that that's what you're doing, but you get paid for that. You do get paid for it because it is on the LMR. So in those instances, there has to be an LMR that tells you you're gonna move this stuff back to Bagram. And that's the indication that means that you're gonna get paid because you're told to take these goods and bring them back. Yes. All right, thank you. And the invoicing clause also makes clear that you're paid for the movement of trucks that is directed by the government. If it's directed, we pay for it. And in fact, we did. Where is directed? In 410, it used the word as indicated. Certainly, I was referring there to the invoicing clause when I just spoke. But I don't read this as any different between, I read 4.1 and 4.10 together. And if it's on the LMR, TMR, it's directed. And we paid for everything on the LMR, TMRs. And then 4.2, mission days, where there's an E1 invoicing heading. The contractor shall only invoice for days of actual service performance. And then there's another statement. Any event not directed by the government shall not be included as a day of services for the purposes of invoices submitted to the government. So again, this says only when you're directed by the government are you, does the government have an obligation to pay for services that day? Yes, we agree with that. And I take the- Is there any way for the government to direct an event to be performed by the contractor outside of the use of a mission statement, outside of the use of an LMR, TMR? Having reviewed the entire record, I'm not aware of any. But I can see that being wartime, something might occur. But in any event, if it did occur, the obligation of the government is to put it in an LMR, TMR. And we believe that they would have put it in the LMR, TMR, and you would have been paid for it if you did it pursuant to direction. Okay. Now, if I could just address, briefly, the other points that were made by my colleague here. Referring to the question and answer, number 34, I think that's very clear that the question was about paragraph 4.10, and 4.10 combined with 4.1 and the invoice enclosed together. It all makes very clear that it has to be on a LMR, TMR in order for backhaul operations to be payable. And if it was, then it would be paid at the rates, and that's how the government responded. The other provision that was argued is paragraph 4.11.1. And here, as I understand the argument that's being made, it's one of necessity. They're arguing, well, this was really, we needed to do it this way. Well, that's not how you become entitled to payment. You're only entitled to payment if the action, if the travel of the truck is directed by the government in the LMR, TMR. It's not whether you, the contractor, view travel of a truck as being necessary. That's not what entitles you to payment. And hypothetically, these convoys traveled with convoy team leaders. Those are the CTLs. Hypothetically, those individuals could have returned the LMR, TMRs to the program manager at Bagram. Point here is only is that the action was not directed by the government. It was actions that the contractor decided it would take on its own. Then, just turning to the modification. This is modification. Modification three of the contract, which changed the terms. Our position on modification three is that it changed, excuse me, that it clarified language that was already clear in the base contract. And because the base contract is clear and has only one reasonable interpretation, what that means is that even if modification three was void and the original language remained in place, the claim for the option year. Doesn't that suggest, and we do a lot of statutory construction here in all of this stuff. I mean, doesn't the subsequent codification of a clearer rule suggest that it was different than the previous rule? No, no. Well, there is a difference. If you look at the change, there is a difference because they changed, for example, they changed the definition of retrograde they changed the definition of backhaul. But that's not the question before the court. The question before the court is whether there's only one reasonable interpretation of the contract language for the base year. That's the issue before the court. And- Right, and the question I think Judge Prost has, doesn't the modification to the contract raise an inference that what the contract says now as modified has a different meaning than what was there before? Well, but not with respect. The terms are different. There's a different definition of retrograde. And there is a different definition of backhaul. But the issue was whether you were entitled to compensation under the terms of the base year contract. And there, there is only one reasonable interpretation. And we're relying here on paragraphs 4.1, 4.10, the invoicing clause, the fact that- Right, so then what was the purpose of the modification? The modification- What was the intent? There was a dispute between the Starwalker and the government. Starwalker contended that they should be entitled, they should be paid for backhaul, even though it was not an LMR, they weren't carrying anything, they should be paid. And just to clarify if I could, there was a question from Judge Hughes about whether the Starwalker asked for an LMR or TMR. That, in fact, did not happen. If you look at the emails that are in the appendix, you'll see that that question was not raised. But there was indeed a dispute. And in order to resolve the dispute for the option year, the language was changed. But the point I'm making here about modification three is if you agree with us that there's only one reasonable interpretation of the contract base year terms, even if mod three is void and the original language remains in place, what that does is it results in an affirmance of the denial for the option year because they're not entitled. We're way over time. We appreciate your effort. Thank you. Mr. Dowd, will we still have three minutes? Thank you, Your Honors. I will be brief. In terms of the modification, I think there's no question that shows that there's at a minimum some ambiguity in the original contract. Well, doesn't it just show that you thought there was an ambiguity and the government, in order to get over the dispute with you, made it clear it thought there was no ambiguity? I think in the abstract, Judges, I might agree with you. But when you look at the record, so for example, the original contract, contracting officer, Lieutenant Colonel McIntyre, he issued a memorandum December 15, 2009, in connection with the proposed modification saying that there's a likelihood that there's gonna be equitable adjustments given the scope of the change. He testified that he was changing the language of the contract to make sure that backhaul was no longer compensable. So in the abstract, I might agree. But when you look at the language, 4.10, 4.2, they both expressly say. Is government counsel correct that you never asked for an LMR for a cargo-less backhaul operation? Did we ever ask for an LMR or TMR? Well, I'm not really sure. I think the answer to your question is it's not in the record. There's no indication of such. But I'm not really sure that's relevant because there was clear dispute June, July, 2009, back and forth with the contracting office that we explained based on the contract language that we think backhaul should be compensable. So does that answer your question? Yeah, it answers my question. I mean, if you thought cargo-less backhaul should be compensated and you knew the way to get compensated was to ask for an LMR, I'm kind of curious why you didn't ask for an LMR. So I think that's where, judges, that's where maybe the miscommunication or the ambiguity lies, right? Because when our contractor asked Q&A 34, right, the government didn't respond, right? The government pointed to Section 4.2, right? And so all the parties knew that backhaul would be necessary. I mean, it's absolutely necessary to execute this contract. Your question, though, specifically referenced 4.10. And so if 4.10 unambiguously restricts backhaul being contemplated in that provision to backhaul that includes cargo as directed by the government through an LMR-TMR, then that's the reason why the Q&A doesn't help you because in the context of that Q&A, it's all inside the idea of a very limited kind of LMR, a backhaul that's actually directed by the government through an LMR-TMR. Judge Chen, if you come to that conclusion, I'll agree with you, but I think the only way you can come to that conclusion is read 4.10 in the absence of the Q&A, right? We all understood what backhaul was. We all understood it was necessary. No, no, no, no, no. This is where I think, I don't think you're making the correct argument here because of course backhaul, as a generic term, can include cargo-less movement of vehicles. Yes. But backhaul as defined in 4.10 specifically references the delivery of goods and resources, right? And then further says, as indicated on an LMR, so the government is not using this generic definition of backhaul that is both cargo and cargo-less return. It is talking only about cargo return. Judge, 4.10, it doesn't define backhaul. It actually uses the distinction between backhaul and retrograde. So retrograde is generally considered retrograde operations delivering material from the FOBs back to the base. Okay, let's put that aside. Okay. Actually, nevermind. You're well over your time. What? It defines backhaul in the sense that it is using it in the context of that whole sentence, which talks about the delivery of goods and resources, as indicated on an LMR. So it contemplates cargo backhaul, not cargo-less backhaul. Why isn't that the best reading? Because I think perhaps at best it's a reasonable reading, but it's not the only reasonable reading. And a reasonable reading is to look at that provision and say there's delivery to and from, there's delivery including retrograde operations, which are different than backhaul operations. So I think, Your Honor, at best, there's some ambiguity. And in fact, my colleagues from the government acknowledged that in response today, saying that she had to rely on testimony in response to one question. And my closing thought, Your Honor, because I know I'm way over time, just to address my colleague's point about Mr. Mohadidi's testimony, he testified clearly that he was compensated for backhaul. And that was 1438. And I think that's not an accurate reading of the testimony. But I know that goes to, if we're in an ambiguous line. So, thank you. Thank you, Your Honor. Thank you very much, both sides, and the case is submitted.